In re SCOPE DISPLAY & BOX CO., INC., Debtor.

Louis A. GEREMIA, Trustee, Plaintiff,

v.

GEM–CRAFT, INC., Defendant.

Bankruptcy No. 8000894.
Adv. No. 820344.

United States Bankruptcy Court,
D. Rhode Island.

March 16, 1983.

Diane Finkle, Winograd, Shine & Zacks, P.C., Providence, R.I., for plaintiff.

David A. Schechter, Schechter, Abrams & Verri, Providence, R.I., for defendant.

DECISION AND ORDER ON TRUSTEE'S COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the Trustee's Complaint alleging that the Defendant, Gem-Craft, Inc., owes the debtor, Scope Display and Box Co., Inc., $2000.00 for damages resulting from Gem-Craft's wrongful rejection of goods partially completed pursuant to an oral contract.[1]

Scope and Gem-Craft disagree on virtually all pertinent points, and the evidence presents two wholly irreconcilable versions of a purported contract between Scope and Gem-Craft. Accordingly, the Court must rely exclusively on its own observations and conclusions regarding the credibility and/or reliability of the testimony. Stephen Wilbert, vice president of Scope, testified that he regularly received telephone orders from Gem-Craft, over a period of several years, for jewelry display cases. Wilbert dealt with both Richard Verri, counsel and general manager for Gem-Craft, and Ronald Verri, vice president of the company, although the great majority of his discussion regarding displays for rings was with Richard Verri.

---

9. *In re Briarbrook Development Corp.,* 11 B.R. 515, 520 (Bkrtcy.W.D.Mo.1981).

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

Wilbert testified that on December 6, 1979 he received a telephone order for 75 ring-display cases from Ronald Verri of Gem-Craft. Wilbert further testified that he can distinguish Ronald Verri's voice from that of his brother Richard, and that he is certain that it was Ronald to whom he spoke. Wilbert had a note prepared by a member of his staff to the effect that an order for "75 special paradise ring units" had been placed by Gem-Craft, and that the price per unit was expected to be approximately $35.00. The notation "verbal—Ron Verri" also appears on this document (Plaintiff's Exhibit 2), and on the typed order form prepared by Wilbert's secretary (Plaintiff's Exhibit 3).

According to Wilbert, Ronald Verri indicated in the December 6 conversation that four units were needed immediately, and it is undisputed that Scope shipped and that Gem-Craft paid for and received four ring-display cases in January 1980. (Plaintiff's Exhibit 4). Later in January, Gem-Craft returned four units to Scope for minor modifications because (according to Wilbert) Gem-Craft's customer had requested a color change in part of the display case. The changes were made and the units returned to Gem-Craft (Plaintiff's Exhibits 5 and 6).

Wilbert testified that he talked with Richard Verri in February 1980 regarding the choice of color of inserts for the remaining display units. At that time, Richard Verri informed Wilbert that Gem-Craft's customer had cancelled its order, and that they (Gem-Craft) would attempt to sell the remaining display units to another customer. According to Wilbert, many subsequent calls to Gem-Craft were not returned, perhaps because Gem-Craft had failed to pay Scope for some prior orders.

Wilbert testified that Scope was unable to complete production of the ring-display units because Gem-Craft failed to notify Scope of the final choice of color for the inserts. Because he was unable to contact either Richard or Ronald Verri by telephone, Wilbert finally sent Gem-Craft an invoice on May 12, 1980 for 80 units, "90%

finished", at $25.00 each, for a total of $2000.00 (Plaintiff's Exhibit 7). Wilbert stated that $25.00 rather than the contract price of $32.50 was charged because the units were unfinished.

In contrast to Stephen Wilbert's testimony, Richard and Ronald Verri, principals in Gem-Craft, testified that no one at Gem-Craft had placed an order for the ring-display cases with Scope. Ronald Verri asserted that his brother Richard handled all business pertaining to rings. Ronald also testified that he did not place an order with Scope for any ring displays. Gem-Craft produces hundreds of items, and this fact may provide an explanation for Ronald Verri's difficulty in recalling the dates and the precise nature of his contacts with Scope.

Richard Verri testified that at the end of November 1979, he was on vacation for approximately ten days, and that Ronald Verri was in charge of Gem-Craft during his absence. Ronald Verri testified that although he had no recollection of contacts with Scope while his brother was on vacation, he had the authority to handle matters that required immediate attention during his brother's absence.

Richard Verri testified that in November 1979 he talked with someone at Scope about a ring-display case for Gem-Craft's customer, Paradise, and he received a sample from Scope which held five dozen rings, instead of the six dozen capacity which Paradise desired. He sent the case manufactured by Scope to Paradise, and it was apparently rejected by Paradise. Paradise referred Richard Verri to another manufacturer of display cases, which Paradise believed would produce displays at less expense and of better quality than those produced by Scope. Richard Verri testified that he did not inform Scope about Gem-Craft's business dealings with the new manufacturer, since he did not wish to harm Gem-Craft's relationship with Scope. Although Scope had produced at least one prototype unit for Gem-Craft, Richard Verri testified that nei-

ther he *nor anyone else* at Gem-Craft[2] placed an order with Scope for additional units. Verri stated that the four units which Gem-Craft received from Scope in January 1980 were probably for an order placed prior to the November 1979 discussion regarding the Paradise display units.

When Gem-Craft received an invoice from Scope in May 1980 for $2000.00 for 80 "Pyramid Units" that were "90% finished" (Plaintiff's Exhibit 7), Richard Verri responded in a letter dated May 19, 1980 that he did not know to what the invoice referred (Defendant's Exhibit D). After receiving a written explanation, he responded on June 4 that at no time did he place such an order (Defendant's Exhibit A).

## FINDINGS AND CONCLUSIONS

1. Stephen Wilbert did receive a telephone order from Gem-Craft on or about December 6, 1979, for 75 "Paradise" ring-display units, and the order was placed by Ronald Verri, whose memory for dates and other details was understandably vague. We further find that Ronald Verri was authorized to place such orders for Gem-Craft.

2. Conflicting testimony was presented concerning the number of rings which each display case was to hold. Richard Verri testified, however, that a prototype which was designed for five dozen rings was modified by Gem-Craft by making additional slots to accommodate six dozen rings. Based upon all of the evidence, we find that such adaptations or changes are easily made, and that the exact number of rings which the units were designed to hold is not critical or relevant to this proceeding.

3. We reject the contention of Gem-Craft's counsel that the principals of Scope, preparing to file a Chapter 11 petition, were so eager for the Gem-Craft order that they specially manufactured 80 ring-display units in order to generate accounts receivable. Our experience is that business debt-ors on the verge of bankruptcy often receive or accept payment for work not completed, but they rarely engage in the expense of production of specially manufactured goods, in the hope of generating receivables on their books. That contention is totally unsupported by the record.

4. The delay from February until May 1980 in Scope's billing Gem-Craft for the partially finished goods was caused by Scope's reliance on Gem-Craft's representation that Gem-Craft would attempt to dispose of the display cases to another customer, after Paradise had cancelled its order.[3] If there was any deception here, it was on the part of Gem-Craft, which concedes that it did not inform Scope that it had located another manufacturer for its ring-display cases. Stephen Wilbert's statement that Richard and Ronald Verri presumably were avoiding his telephone calls because Gem-Craft had failed to pay overdue bills to Scope is uncontradicted, and is accepted.

5. The Plaintiff/Trustee has met his burden of establishing that Scope entered into a valid and enforceable contract with Gem-Craft, and that Gem-Craft breached that contract by wrongfully rejecting the goods. Since the parties have stipulated that damages would be $2000.00 if the Plaintiff prevails, we need not consider the additional damages to which Scope would be entitled under R.I.Gen.Laws §§ 6A–2–708 (Seller's damages for non-acceptance or repudiation), 6A–2–709 (Action for the price), or 6A–2–710 (Seller's incidental damages).

This is a related proceeding as defined by Local Rule 53, the emergency resolution adopted by the United States District Court for the District of Rhode Island. The parties have consented to the entry of a judgment or order by this Court; therefore, it is unnecessary to submit findings, conclusions, and a proposed judgment to the United States District Court pursuant to Local Rule 53(D)(3)(b).

---

**2.** It has not been demonstrated how this assertion can be made with any certainty or element of reliability.

**3.** This breach of contract by Paradise has been pursued by Gem-Craft in the Providence County Superior Court.

Enter judgment for the Plaintiff in the amount of $2000.00.